**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**LONDON**

**CIVIL ACTION NO. 08-122-JBC**

**DAVID MILLER,**                                                                                    **PLAINTIFF,**

**V.**                                       **MEMORANDUM OPINION AND ORDER**

**MICHAEL ASTRUE,**
**SOCIAL SECURITY ADMINISTRATION,**                                       **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") (R. 12, 17).  The court will deny the plaintiff's motion and grant the defendant's motion.

**I.      Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.

1994).  The court does not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See id.*  Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II.    The ALJ's Determination

At the time of the alleged disability onset date, David Miller was a fifty-one-year-old male.  AR 23.  He alleges disability beginning on July 23, 2004, due to a variety of physical impairments.  AR 19.  Miller filed his claim for DIB on July 30, 2004.  AR 17.  The claim was denied initially on November 5, 2004, and again

upon reconsideration on April 19, 2005.  *Id.*  After a hearing on May 18, 2006, Administrative Law Judge ("ALJ") Frank Letchworth determined that Miller did not suffer from a disability as defined by the Social Security Act. AR 19, 25.

At Step 1, the ALJ found that Miller had not engaged in substantial gainful activity since the alleged disability onset date.  AR 19.  At Step 2, the ALJ found that Miller had severe impairments of coronary artery disease with a history of myocardial infarction with stents placed in 2003; peripheral vascular disease with stents placed in 2004; HIV infection with one hospitalization for pneumonia; depression; and mild dementia.  AR 19.  The ALJ then determined that Miller's impairments did not meet or equal a listing in the Listing of Impairments at Step 3. AR 20.

To assess Miller's claim at Steps 4 and 5, the ALJ found that Miller had a residual functional capacity ("RFC") to perform light work with no climbing of ropes, ladders or scaffolds; no concentrated exposure to extreme cold, vibration, pulmonary irritants, unprotected heights or hazardous equipment; and a sit/stand option with no sitting or standing for more than 30 minutes.  AR 21.  The ALJ determined that the plaintiff could "follow simple instructions in a task oriented setting with no more than occasional contact with the public."  *Id.*  At Step 4, the ALJ found Miller unable to perform his past relevant work as a hand packer, plastic molding machine operator, or window shade cutter.  AR 23.  Finally, at Step 5 the ALJ determined that due to the Miller's age, education, work experience, and RFC,

jobs exist in significant numbers in the national economy that Miller can perform.

AR 25.  The ALJ denied the plaintiff's claim for DIB on August 9, 2006, (AR 25),

and the plaintiff appealed to the Appeals Council.  The Appeals Council denied his

request for review on February 14, 2008 (AR 8), and he commenced this action.

III.    **Legal Analysis**

Mr. Miller contends that the ALJ's decision that he is not disabled is not

supported by substantial evidence.  Specifically, Miller argues that (1) the ALJ

erroneously determined the plaintiff's RFC, including both his physical and mental

limitations; (2) the ALJ improperly rejected the opinions of treating medical sources;

and (3) the ALJ performed an "improper credibility analysis."[1]

---

[1]     The plaintiff begins by arguing that the ALJ erred in not finding certain
impairments to be "severe."  A "severe impairment" is "any impairment or
combination of impairments which significantly limits [the claimant's] physical or
mental ability to do basic work activities."  20 C.F.R. § 416.920(c). The conditions
thus identified by the plaintiff are: emphysema/COPD; lower extremity HIV-induced
neuropathy; low body weight; Raynaud's Disease; ulnar neuropathy; degenerative
disc disease/arthropathy of the lumbar and cervical spine; carpal tunnel syndrome;
the neurological findings by the University of Kentucky neurologists (such as
difficulty with tandem gait, indications of gait problems, loss of "fine position
sense" in toes); hepatitis; and weakness and fatigue.  (The plaintiff also identified
depression; however, the ALJ did determine that the plaintiff's depression was a
severe impairment.  *See* AR 19.)

However, the ALJ did identify other impairments of the plaintiff's as "severe"
and continued to the next step of his analysis of the plaintiff's claim of disability.
*See* AR 19.  The court concludes that the ALJ therefore did not commit reversible
error by failing to identify any specific impairment as "severe."  *See Maziarz v.
Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir. 1987) (finding no
reversible error where although ALJ did not find certain impairments "severe," did
find other impairments "severe" and continued analysis of claims).  The proper
focus for this court's analysis is whether the ALJ considered the entire medical
record – including any claimed impairments – in determining the plaintiff's RFC.

4

A.      The RFC Determination

In determining Miller's RFC, the ALJ properly considered the entirety of the

plaintiff's medical record.  Substantial evidence supports the ALJ's decision that

Miller retained the capacity to perform light work, with the additional limitations

noted by the ALJ.

A review of the record further supports the ALJ's determination of Miller's

RFC.  Two agency doctors reviewed Miller's record and found only moderate

physical limitations.[2]  AR 513-30.  These doctors made their findings despite noting

the presence of carpal tunnel syndrome, HIV-infection, heart disease, breathing

problems, and blocked arteries in the legs. *See* AR 514; 530.

The objective medical evidence also supports the ALJ's determination.  For

example, on March 1, 2006, an x-ray revealed that Miller had "subluxation of L3

under L2;" "*mild* curvature of the lumbar spine;" and "*mild* degenerative disc

_____

*Jamison v. Comm'r of Social Sec.*, 2008 WL 2795740, at *8-*9 (S.D. Ohio July
18, 2008) (distinguishing *Maziarz* and finding reversible error where ALJ did not
find certain impairment "severe" and also did not consider impairment in
determining RFC); *Tuck v. Astrue*, 2008 WL 474411 (W.D. Ky. Feb. 19, 2008)
(finding that failure to evaluate impairment of depression as "severe" at second
step, combined with error to include depression in RFC, was reversible error).  As
discussed above, the ALJ did consider the entirety of the plaintiff's medical record
in making his RFC determination.

[2]Specifically, these two doctors determined that Miller could occasionally lift fifty
pounds; could frequently lift twenty-five pounds; could sit with normal breaks for
about 6 hours in an 8-hour workday; could push/pull as much as he could lift; could
never climb ramps/stairs or ladders/ropes/scaffolds; and had no manipulative,
visual, or communicative limitations.  AR 514-20; 521-29.

disease." AR 611 (emphasis added). The record contains no indication that these impairments are debilitating to the point of significantly limiting Miller's ability to work. An MRI from the same date led to findings that Miller had "mild" and "moderate" changes to his spine. AR 610.

Furthermore, Miller has experienced few HIV-related symptoms. In August of 2004, his long-time treating physician, Dr. Stephen Weber, observed that "Mr. Miller has never had any symptoms related to his HIV infection" and noted that Miller was no longer taking anti-retroviral medications. AR 298.

As noted by the ALJ, at a consultative examination on December 5, 2005, Elizabeth Scarbrough, Advanced Registered Nurse Practitioner, examined the plaintiff's musculo-skeletal system, including spine, legs, wrists, and hands. She found that Miller retained full range of motion and noted no problems other than some swelling and tenderness at one joint in the hand. *See* AR 574-75. She found no spine abnormalities. *Id.* On April 12, 2005, Dr. Alice Thornton, a treating physician, found only "mild compression of the ulnar nerve at the right elbow" and "moderate compression of the median nerve at the right wrist (carpal tunnel syndrome)." AR 491. According to Miller, Dr. Thornton noted that if his pain worsened, she would refer him to an orthopedist.[3] The record reveals no such follow-up treatment. In fact, the plaintiff testified at the hearing that his pain was being controlled by medication and was now "tolerable." AR 725. Miller's heart

_____

[3]Although Miller cites pages 477 and 486 for this statement, the court finds no such information there.

6

disease was also amenable to treatment; Miller was treated with angioplasties at least twice, and each time the reports note "excellent" results.  AR 254; 258.

Despite Miller's argument to the contrary, the ALJ did properly adjust the plaintiff's RFC to reflect Miller's exertional limitations due to his weakness and fatigue.  The plaintiff argues that in determining that he had the capacity to perform light work, the ALJ neglected to take into account Miller's exertional limitations due to his weakness and fatigue.  However, the ALJ did appropriately determine Miller's RFC, with attention to those limitations.  According to the relevant regulation, light work "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  However, the ALJ described the plaintiff's abilities as more limited, finding that he "requires a sit/stand option so that he need not sit or stand more than 30 minutes at a time."  AR 21.  The ALJ also included in his RFC that the plaintiff could not climb ladders/ropes/scaffolds.  AR 21.  Therefore, the ALJ incorporated Miller's exertional limitations into his RFC.[4]

The record also supports the ALJ's determination of the plaintiff's mental limitations.  The ALJ concluded that Miller had mild restrictions in abilities to

---

[4]The ALJ did not specifically address Miller's low body weight, but the evidence in the record does not support the plaintiff's argument that this impairment was severe and should have affected the ALJ's determination of the plaintiff's RFC.  For example, on August 18, 2004, Dr. Weber reported that Miller believed that "appetite is stable" and that his weight was also "stable."  AR 300.  The plaintiff does not identify, and the court does not find, any medical evidence that Miller's low body weight requires an RFC different from that determined by the ALJ.

perform "activities of daily living"; moderate "difficulties in maintaining social functioning"; moderate "difficulties in maintaining concentration, persistence, or pace"; and "no repeated episodes of decompensation."  AR 21.  He ultimately found that these limitations resulted in the plaintiff's RFC of ability to follow only "simple instructions in a task-oriented work setting with no more than occasional contact with the public."  AR 21.

The ALJ's assessment of the plaintiff's mental capacities is supported by the record.  The plaintiff was examined by Gary Maryman, Psy. D., on October 5, 2004.[5]  Dr. Maryman concluded that Miller has "a reasonably good ability to sustain his focus and concentration to where he would be able to complete and carry out a work assignment across a routine work schedule."  AR 511.  Dr. Maryman noted no history of psychiatric treatment and found that Miller has the capacity to "interact appropriately with fellow workers and supervisors" although his contact with the public should be limited.  *Id.*[6]

In February of 2006, Miller received neurological testing at the University of Kentucky. AR 614.  Notably, Dr. Sidney Houff, the testing physician, did not

--------

[5]The plaintiff complains that this report is of little value because it is "out-dated." Yet, because Miller alleges a disability onset date of July 23, 2004, the report was issued during a relevant time period.

[6]Miller complains that the ALJ should have not relied on Dr. Maryman's assessment because Maryman did not review the April 18, 2006, neuropsychological testing by Dr. Michelle Mattingly, a neuropsychologist, and the report of Anne Bird, M.S.  Dr. Maryman's report was made in October of 2005, so the later reports of Mattingly and Bird were not available for such review.

restrict Miller's activities in any way.  *Id.*  Rather, she noted that he was not taking pain medications and prescribed one.  AR 615-16.  While Dr. Houff noted that the testing of Miller suggested dementia, she suggested further testing to ascertain a specific problem.  *Id.*  One such referral was to Michelle Mattingly, a neuropsychologist.  Dr. Mattingly found that Miller "acknowledged depressive symptoms" and she concluded that [t]esting is consistent with a very mild subcortical dementing process," noting that she could not fully assess the extent due to Miller's "variable effort."  AR 678.  Nonetheless, she did not diagnose debilitating dementia.  Anne Bird seconded that diagnosis, finding a variety of symptoms "consistent with a mild subcortical dementia."  AR 679.

The assessments of the reviewing psychologists, Ilze A. Sillers (AR 531-35) and Stephen Scher (AR 536-38), also support the ALJ's conclusions as to Miller's mental impairments.  These psychologists diagnosed him with dysthymic disorder but no other mental impairments.  *See* AR 541-54; AR 555-69.  In summary, substantial medical evidence shows mild dementia and a history of depression.  The ALJ's assessment is consistent with this substantial evidence.

B.    The Treating Medical Sources

The ALJ did not err by rejecting the opinions of Dr. Thornton, one of the Miller's treating physicians, and of Patricia Callahan, a licensed social worker and the plaintiff's therapist.

9

The opinions of a treating physician are entitled to significant deference. *See, e.g., Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the support for the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion.  *Wilson*, 378 F.3d at 544.  An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings.  *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y of Health and Human Servs,* 25 F.3d 284, 287 (6th Cir. 1994); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

Dr. Thornton opined that the plaintiff was unable to work for any amount of time; that he could not sit, stand, or walk; that his conditions interfered with his ability to concentrate "frequently;" that he could "never/rarely" lift or carry even less than ten pounds; and that his conditions would interfere with his work attendance more than six days per week.  AR 620-21.  She also determined that he could neither walk, nor stand, nor sit for any length of time.  AR 620.  In short,

10

according to Dr. Thornton, Miller was completely unable to work, in any capacity. The ALJ stated good reasons for rejecting this opinion, and his reasons are supported by the record.  He correctly noted that Dr. Thornton's opinion "appears to be based on diagnoses/symptoms rather than clinical findings." AR 23.  He found that her opinion was "grossly inconsistent with [Miller's] admitted daily activities and inconsistent with other substantial evidence of record, especially the benign reports of treating physician Weber, who treated the claimant through August 2004." *Id.*

There is no requirement that the ALJ give the opinion of a licensed social worker the same deference due the opinion of a treating physician.  *See* 20 C.F.R. § 404.1513(a),(e); *Correll v. Astrue*, 2009 WL 2601917 (E.D. Tenn. Aug. 24, 2009).  In rejecting Callahan's opinion, the ALJ properly explained that he was giving Callahan's opinion little weight because it was inconsistent with both the medical findings and accompanying diagnoses of other examining physicians.  *See* AR 23.  *See Kita v. Comm'r of Social Sec.*, 2009 WL 1464252, at *5 (W.D. Mich. May 18, 2009) (adopting opinion of magistrate judge which found that a licensed social worker's assessment merited only the weight given to lay opinion) (citations omitted).

C.     Credibility

Miller also contends that the ALJ made an "improper credibility analysis." The ALJ is required to consider all symptoms, including pain, in determining

11

whether a claimant is disabled. 20 C.F.R. § 404.1529(a).  Before these symptoms will lead to a finding of disability, however, medical signs must exist which show that the plaintiff has an impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). When such medical signs are present, the ALJ must then evaluate how the intensity and persistence of the symptoms affect the plaintiff's ability to do work. 20 C.F.R. § 404.1529(c); *see also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir.1994) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986)). In performing this inquiry, the ALJ must consider the objective medical evidence, evidence of the plaintiff's daily activities, the frequency and intensity of the plaintiff's pain, any precipitating or aggravating factors, any medications taken to alleviate the pain, and any other measures taken to remedy the plaintiff's pain. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. § 404.1529(c)(3). Although an ALJ's credibility findings are to be accorded significant deference, an ALJ's assessment of the plaintiff's credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997).

The ALJ found that Miller's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  Substantial evidence in the record supports his determination.  Miller testified that he drove himself to the administrative hearing and that he usually prepares meals and drives to the grocery store and shops for himself.  AR 719.  The ALJ also noted that since

12

the alleged onset of disability, Miller had made two trips to Pennsylvania and planned to make a third.  AR 23. "As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain," *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir.1990), and therefore the ALJ properly considered these self-reported activities.  In addition, the plaintiff testified that his pain was being controlled by recently introduced medications, and the ALJ noted this evidence in this opinion.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R. 17) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 12) is **DENIED**.

Signed on  September 29, 2009

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

13